Argued and submitted November 1, 1995, reversed and remanded for
reconsideration June 19, 1996

# OREGON OCCUPATIONAL SAFETY
## & HEALTH DIVISION,
### *Petitioner,*

*v.*

## PORT OF PORTLAND,
### *Respondent.*

## (SH-93-297; CA A85884)

918 P2d 448

Janie M. Burcart, Assistant Attorney General, argued the cause for petitioner. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

George Goodman argued the cause for respondent. With him on the brief was Cummins Goodman Fish & Peterson, P.C.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Petitioner Oregon Occupational Safety and Health Division (Or-OSHA)[1] appeals a final order of the Workers' Compensation Board (the Board) granting employer Port of Portland's (the Port) motion to dismiss as untimely a citation Or-OSHA issued for violations of the Oregon Safe Employment Act (OSEA).[2] *See* ORS 654.071(1). We reverse and remand for reconsideration.

The relevant facts are not disputed. On Saturday, April 17, 1993, at 8:20 p.m., longshoreman Michael Cork was struck and killed by a top loader at a Port of Portland terminal. Marine security notified the Port, and the Port's risk manager, Catherine Brown, went to the scene. She arrived at the scene of the accident at 8:53 p.m. She saw the body and ordered the area secured. Sometime before 9:30 p.m., Brown telephoned Or-OSHA. She reached a recorded message that instructed her to call the agency's emergency number. Brown called the emergency number and reported that a worker had been struck by a top loader and killed instantly. The emergency operator who took the call contacted the Or-OSHA officer on duty, Terry DeForest, and reported that a worker had been hit by a top loader at the Port and had been killed.

DeForest had some difficulty contacting Brown, but eventually she called him from the accident scene. Brown told DeForest that a worker had been hit and killed by a top loader, that an emergency crew and medical examiner were on the scene and that she needed permission to have the body removed. DeForest permitted removal of the body but requested that the scene otherwise remain secured until Or-OSHA could investigate the following day.

On Sunday, April 18, 1993, DeForest telephoned Or-OSHA investigator John Murphy and told him that a worker had been struck and killed by a top loader at the Port and requested that he investigate. Murphy arrived at the scene

---

[1] Both petitioner and respondent, as well as the Workers' Compensation Board, refer to the Oregon Occupational Safety and Health Division as "Or-OSHA," so we do also.

[2] The OSEA is codified at ORS 654.001 through ORS 654.295, ORS 654.750 through ORS 654.780, and ORS 654.991.

that afternoon and began an opening conference. Following the opening conference, Murphy encountered difficulty identifying or contacting all the potential witnesses. He also was off work during June and much of August for personal reasons. Or-OSHA held a closing conference on October 12, 1993, and issued a citation for violations of five standards on October 15, 1993, 181 days after the April 17, 1993 accident.

Employer moved to dismiss the citation as untimely under ORS 654.071(3), which provides:

> "No citation or notice of proposed civil penalty may be issued under this section after the expiration of 180 days following the director's knowledge of the occurrence of a violation * * *."

A hearing was conducted on the extent of the information available to Or-OSHA on the night of April 17, 1993. In the course of that hearing, DeForest testified as follows:

> "Q. Well, did you believe that there was sufficient evidence to determine that a violation had occurred? Based on what you knew from the ORS people * * * did you form any opinion that an—a violation had occurred?
>
> "A. No. I didn't know if there was a violation yet or not. I knew that there was a fatality.
>
> "Q. Does a fatality equate to a violation?
>
> "A. No, sir."

On cross-examination, DeForest further testified:

> "Q. Now, lets assume it's a worker who's killed and you learn about it, and he's struck by a top loader. Can a top loader at a place of employment strike an employee at that place of employment without violating any OSHA regulation or standard, to your knowledge?
>
> "A. I wouldn't be able to answer that question without an investigation.
>
> "* * * * *
>
> "Referee: Let's just talk about whether it's a violation—whether it could be a violation. Can you answer that?

"A.  Really, no. Not with the information you have here. I have to—That's why I send out Mr. Murphy to decide whether I have a violation or not.

"* * * * *

"Q.  On the face of it, just on the surface, when you received information indicating that The Port of Portland had an employee who had driven a top loader into and killed another employee, wouldn't you agree that that information alone, absent mitigating facts, appears to violate [ORS] 654.010?

"A.  On the surface, yes."

After the hearing, the Board found and concluded as follows:

"While not all the information necessary for issuing a citation was available on the 17th, the * * * elements of a violation were sufficiently clear to say that on April 17th, Or-OSHA knew or with the exercise of reasonable diligence, should have known, that a violation had occurred and that the Port was the employer involved. The 180 days began to run on April 17th.

"* * * * *

"Employers have a duty to attempt to prevent workers from being killed by machinery on the job, under the general duty clause as well as more specific safety rules. As acknowledged by Mr. DeForest, 'on the surface, the fact that a top loader hit and killed someone looks like a violation of some [safety] rule.'

"* * * * *

"The issue is not whether on April 17 Or-OSHA had all the information it wanted or needed in order to issue a citation. It had six months to complete its investigation and issue its citation. The question is whether it had sufficient notice on April 17 to believe that some violation of its safety regulations, general or specific, had occurred * * *. * * * [I]t did."

The Board then dismissed the citation as not timely issued.

■    On appeal, Or-OSHA argues that the Board erred in dismissing the citation. Or-OSHA contends that ORS 654.071(3) provides that a citation may not be issued more than 180 days following "the director's knowledge of the

occurrence of a violation." According to Or-OSHA, the director did not know that a violation occurred until at least April 18, 1993, which was 180 days before the citation was issued. The Port defends the Board's decision, arguing that it is not necessary that the director have actual knowledge of a violation and that, on April 17, 1993, the director had sufficient information that he at least should have known that a violation occurred. That, the Port argues, is sufficient to commence the running of the 180-day limitation period.

■ The disposition of the appeal requires us to determine whether the Board correctly interpreted and applied ORS 654.071(3), an issue that we review for errors of law. ORS 183.482(8)(a); *Oregon Occupational Safety v. Fall Creek Logging*, 137 Or App 506, 508, 905 P2d 241 (1995). In reviewing the Board's construction of the statute, we apply the principles of construction set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), looking first to the text of the statute in its context. In construing the language of the statute, we are constrained both by constitutional principles and statutory command neither to insert what has been omitted by the legislature nor to omit what the legislature inserted. ORS 174.010; *Fernandez v. Board of Parole*, 137 Or App 247, 252, 904 P2d 1071 (1995). Instead, we are to construe fairly the terms as enacted, giving the words their plain, natural and ordinary meaning, unless there is evidence that the legislature intended otherwise. *PGE*, 317 Or at 611.

ORS 654.071(3) provides that a citation may not be issued more than 180 days "following the director's knowledge of a violation." Two key conditions are expressed by that phrasing: first, that the 180-day period is triggered by the director's *knowledge*, and second, that what the director must have knowledge of is a *violation*. We begin our analysis of the statute with the intended meaning of the reference to the director's knowledge.

The term "knowledge" generally refers to

"the fact or condition of knowing **a**(1): the fact or condition of knowing something with a considerable degree of familiarity gained through experience of or contact or association with the individual or thing so known * * * **b**(1): the fact or

condition of being cognizant, conscious, or aware of something * * * (2): the particular existent range of one's information or acquaintance with facts * * *."

*Webster's Third New International Dictionary* 1252 (1976). In the law, however, it cannot be gainsaid that the term sometimes refers to actual knowledge—consistent with the foregoing definition—and sometimes to constructive knowledge, referring to the extent to which information merely gives one reason to have known a fact, whether or not actual knowledge occurs. *See Black's Law Dictionary* 784 (5th ed 1979).

Examining the text of ORS 654.071(3) in its context, however, it is clear that the legislature understood the distinction between the two types of knowledge and used language accordingly. Thus, in ORS 654.071(1), the director or an authorized representative of the director is authorized to issue a citation if either

> "*has reason to believe*, after inspection or investigation of a place of employment, that an employer has violated any state occupational safety or health law, regulation, standard, rule or order * * *."

ORS 654.071(1) (emphasis supplied); *see also* ORS 654.031 (director shall issue citation when he or she "has reason to believe" that any place of employment is unsafe). Similarly, in ORS 654.071(4), the director is authorized to consider failure to correct a violation as a separate violation if he or she

> "*has reason to believe* that an employer has failed to correct a violation within the period of time fixed for correction, or within the time fixed in a subsequent order granting an extension of time to correct the violation * * *."

ORS 654.071(4) (emphasis supplied).

In contrast, ORS 654.071(3) provides that no citations may issue more than 180 days from the "director's knowledge of the occurrence of a violation." The statute does not say 180 days from the date the director "has reason to believe" a violation has occurred. To construe the reference to "knowledge" in ORS 654.071 to mean "has reason to believe," would require us to ignore the distinction that the legislature has drawn in that section between the two different terms without any evidence that the legislature so intended. We

reject the Port's proposed construction of the statutory term "knowledge" and turn to the question of the intended meaning of the "violation" of which the director must have knowledge to trigger the 180-day period.

At the outset, we note that the statute refers to knowledge of a "violation," not merely an accident. The distinction is important, for it does not necessarily follow that all accidents—even fatal ones—constitute violations within the meaning of the statute. ORS 654.071(3) does not define the term "violation," nor does it spell out what must be violated to implicate the statute. Other sections of the statute, however, repeatedly refer to "violations" in terms of violations of any laws, regulations or standards pertaining to occupational safety and health. *See, e.g.,* ORS 654.062. Moreover, ORS 654.035 authorizes the director to fix standards by which it may be determined that violations have occurred. The director has done that, and by rule has defined a "violation" to be a

"breach of a person's duty to comply with an Oregon occupational safety or health statute, regulation, rule, standard or order."

OAR 437-01-015(53). Neither the Port nor Or-OSHA challenges the validity of that definition, and, at least for the purposes of this opinion, we adopt it.

The question, then, is precisely what violation the director knew about, if any, on April 17, 1993. The Board did not cite any particular violation. It did refer generally to the duty of all employers to maintain a safe place of employment. The Port asserts that the duty to maintain a safe workplace forms the basis of the Board's decision, and Or-OSHA appears to argue under the same assumption.

The duty to which the parties refer, known as the "general duty clause," is expressed in ORS 654.010:

"Every employer shall furnish employment and a place of employment which are safe and healthful for employees therein, and shall furnish and use such devices and safeguards, and shall adopt and use such practices, means, methods, operations and processes as are reasonably necessary to render such employment and place of employment

safe and healthful, and shall do every other thing reasonably necessary to protect the life, safety and health of such employees."

The statute does not, by its terms, describe particular elements that constitute a violation. The Board held that, to make out a violation of the general duty clause, it must be established that

"(1)   The standard alleged to have been violated must apply to the cited conditions; and

"(2)   The employer's conduct must be out of conformance with the requirements of the standard; and

"(3)   Employees must have been exposed to the cited conditions; and

"(4)   The employer knew or could have known of the conditions."

Or-OSHA does not contest the four-part test the Board applied. The Port does, although it does not cross-assign error to the Board's decision in that regard. According to the Port, employer knowledge is not an element of a general duty clause violation. We need not resolve that particular dispute, because there is a complete absence of evidence as to two other elements.

It is apparently undisputed that the general duty standard applies to the Port. What is disputed is whether the director knew that the Port's conduct was out of conformance with the standard and that its employees were exposed to "cited conditions." Or-OSHA argues that there simply is no evidence that the director knew anything about either element on April 17, 1993. All the director knew at that time, Or-OSHA contends, is that someone was killed by a top loader. As Or-OSHA argues:

"[T]he deceased could have had a heart attack and fallen or intentionally thrown himself beneath the wheels of the top loader or the loader itself could have malfunctioned despite perfect maintenance. None of these things was or could have been known by Or-OSHA the night the longshoreman died."

The Port insists that the fact of the accident itself demonstrated a violation of the general duty clause:

> "On April 17, 1993, the employer reported and Or-OSHA knew of the *occurrence* of a work related fatality. This fatality, *standing alone*, constituted a breach of the employer's duty to provide one of its employees with a safe place of employment * * *."

(Emphasis in original.)

■      The Port cites no authority for its reading of the statute, and we are aware of none. The language of the law certainly does not support that construction. The statute, on its face, requires employers to adopt such practices *"as are reasonably necessary"* to make the place of employment safe and to do every other thing *"reasonably necessary"* to protect the life, safety and health of the employees. ORS 654.010. The statute does not impose the standard of absolute safety that the Port asserts; merely because an accident has occurred does not necessarily mean that a violation has occurred as well. To the contrary, the statute speaks in terms of "reasonably necessary" precautions, which requires an examination of the facts of each case to determine whether a general duty violation has occurred.

Our reading of the language of ORS 654.010 is consistent with federal case law interpreting the federal general duty standard,[3] on which ORS 654.010 is based. *See Skirvin v. Accident Prevention Division*, 32 Or App 109, 111 n 1, 573 P2d 747, *rev den* 282 Or 385 (1978) (Oregon Safe Employment Act based on federal Occupational Safety and Health Act of 1970); *see also Marks v. McKenzie High School Fact-Finding Team*, 319 Or 451, 457-58, 878 P2d 417 (1994) (federal cases can give insight to the meaning of state statutes based upon federal statutes); *Loewen v. Galligan*, 130 Or App 222, 231, 882 P2d 104, *rev den* 320 Or 493 (1994) (same). Under those cases, the fact of an accidental injury is relevant

---

[3] 29 USC §§ 651-678 (1970). The federal "general duty" is found at 29 USC § 654(a)(1):

"Each employer * * * shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees."

to a showing that there has been a violation, but it is not dispositive. In *Bethlehem Steel Corp v. Occ. Saf. & H.R. Comm.*, 607 F2d 871, 874 (3d Cir 1979), for example, the court explained:

> "[A]lthough the occurrence of a death or serious injury may be relevant to proving a violation of the general duty clause, the statute is violated when a recognized hazard is maintained, whether or not an injury occurs. * * * Moreover, an employer may be found not to have violated the general duty clause notwithstanding the occurrence of a death if the hazard was unforeseeable."

*See also Donovan v. Royal Logging Co.*, 645 F2d 822, 829 (9th Cir 1981) (violation occurs on evidence of a practice that could cause serious harm upon other than "freakish" or "implausible" circumstances); *Titanium Metals Corp. of America v. Usery*, 579 F2d 536, 542 (9th Cir 1978) ("OSHA was never designed, nor could it have been, to eliminate all occupational accidents").

With the foregoing construction in mind, it is clear to us that the record is devoid of any evidence as to the director's knowledge, on April 17, 1993, of the reasonableness of the employer's conduct that night. The only information that Or-OSHA had received was that a longshoreman had died when struck and killed by a top loader. That does not speak to the reasonableness of any employer practice or condition at the time, much less the extent to which the employees were exposed to such practice or condition.

The Port insists that the Board found as a matter of fact that the director knew of a violation, based on DeForest's testimony that "on the surface, the fact that a top loader hit and killed someone looks like a violation of some [safety] rule." That argument, however, is based on a misquoting of DeForest's testimony. DeForest simply did not say the words that are quoted in the Board's opinion. To the contrary, he repeatedly asserted that the occurrence of an on-the-job fatality, by itself, does not establish a violation of any applicable standard. On cross-examination, DeForest was asked whether, "just on the surface," knowledge that one employee had driven a top loader on top of another, *"absent mitigating facts,"* appeared to violate the general duty clause. To that

qualified question, he replied: "On the surface, yes." The qualification was, however, that there were no mitigating circumstances. As DeForest repeatedly testified, it could not be determined without an investigation whether such circumstances existed on the night of April 17, 1993.

The Board erred in concluding that the citation had been untimely issued in violation of ORS 654.071(3) and in granting the Port's motion to dismiss.

Reversed and remanded for reconsideration.