Argued and submitted July 28, 1998, reversed and remanded May 12, 1999

Ronda CARLSON,
*Appellant,*

*v.*

Matthew Alvin MARTIN
and Brenda L. Martin,
*Respondents.*

(97CV0002; CA A98970)

983 P2d 1031

Lindsey H. Hughes argued the cause for appellant. With her on the brief was Hallmark, Keating & Abbott, P.C.

Thomas F. Armosino argued the cause for respondent. With him on the brief were Frederick H. Lundblade and Frohnmayer, Deatherage, Pratt, Jamieson, Clarke & Moore, P.C.

Before Landau, Presiding Judge, and Deits, Chief Judge,* and Linder, Judge.

LINDER, J.

---

* Deits, C. J., *vice*, Riggs, P. J., resigned.

**LINDER, J.**

Plaintiff appeals the trial court's dismissal of her personal injury action based on inadequate service of process. The issue turns specifically on whether plaintiff was entitled to use substituted service on the Department of Transportation, Motor Vehicles Division (MVD), pursuant to ORCP 7 D(4)(a)(i). We conclude that plaintiff's service was adequate and reverse and remand for further proceedings.

The pertinent facts are not disputed. Plaintiff sustained personal injuries in an automobile accident that occurred in or near the small rural coastal community of Sixes, Oregon. Plaintiff brought this negligence action against the two individuals involved—defendant Matthew Martin, the driver of the other vehicle in the accident, and defendant Brenda Martin, the vehicle's registered owner. Plaintiff filed the complaint shortly before the two-year statute of limitations expired on the action and thereafter attempted to serve defendants within the 60-day time period permitted by ORS 12.020(2).[1]

Plaintiff, who lives and works in Sixes, knew that defendants did not work in Sixes and had not been seen in that small community for some time. Nevertheless, her attorney attempted both personal and substituted service on defendants at the rural Sixes address listed on the accident report. The deputy sheriff who attempted the service was told by the current residents that defendants did not live there. The deputy returned the service to plaintiff's attorney, indicating that defendants had not been found and reporting that there were no phone listings or other local records for either defendant. By telephone, plaintiff's attorney contacted the MVD and learned that the agency's records showed defendants' address to be the same as the address listed on the accident report. Plaintiff's attorney did not attempt to contact the only local utility company in Sixes (the electric company) because he knew that it would not release customer information without a court subpoena.

---

[1] Under ORS 12.020(2), if proper service occurs within 60 days of the filing of the complaint, the action is deemed to have been commenced on the date on which the complaint is filed.

Plaintiff's attorney next requested and received written confirmation from MVD that the Sixes address was the only address the agency had on file for defendants.[2] After receiving that confirmation, plaintiff served defendants with summons and complaint by delivery to MVD. Plaintiff also mailed the necessary documents to defendants at their Sixes address, using certified mail with a request for a return receipt. The post office later returned the mailing to plaintiff, unopened, and marked as undeliverable and unable to be forwarded. The substituted MVD service was made within 60 days after plaintiff filed her complaint.

In their answer to the complaint, defendants asserted as an affirmative defense that plaintiff had failed to complete service within the time allowed by statute because plaintiff had not complied with ORCP 7 in resorting to MVD service. Defendants moved for summary judgment on that ground; plaintiff moved for partial summary judgment on the affirmative defense. On appeal, plaintiff assigns error to the trial court's grant of defendants' motion and to the denial of her own. Because there are no disputed factual issues, we review the rulings on the cross motions for summary judgment to determine which party is entitled to judgment as a matter of law. *Stevens v. Bispham*, 316 Or 221, 223, 851 P2d 556 (1993). *See also Luyet v. Ehrnfelt*, 118 Or App 635, 637-38, 848 P2d 654 (1993) (whether service was adequate and timely is a legal question).

ORCP 7 D specifies how service of summons and complaint are to be accomplished. The rule contains specific methods for serving a defendant, as well as a general directive that service be reasonably calculated to give the defendant notice of the existence and pendency of the action. ORCP 7 D. In *Baker v. Foy*, 310 Or 221, 797 P2d 349 (1990), the Supreme Court identified the relationship between the rule's specific methods of service and its general directive that service be reasonably calculated to give adequate notice

---

[2] The record is unclear whether MVD records were checked only for the driver or for both defendants. In their motion for summary judgment, defendants stated as a fact that MVD records had been checked for each of them. However, the record only contains an MVD print-out for defendant Matthew Martin, the driver. In all events, despite the lack of clarity in the record, no issue about the adequacy of the confirmation of address through MVD has been raised.

and set out the framework for determining whether service is adequate. The court determined that if service is accomplished by any of the specific methods identified in the rule, the service is presumptively adequate; without a basis in the record to overcome the presumption, the inquiry ends. If service is not accomplished by one of the methods specified in the rule, the court must determine whether the plaintiff's method of service was reasonably calculated, under all the circumstances, to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend. *Id*. at 225-29.

Plaintiff argues first that she properly accomplished service by delivery to the MVD, which is one of the specific service methods in ORCP 7 D that gives rise to a presumption of adequate service.[3] Alternatively, she argues that, under the circumstances, given her efforts to locate defendants, service on MVD together with certified mailing to the last address on file with MVD for defendants was reasonably calculated to give defendants notice of the action and an opportunity to appear and defend. Because we conclude that plaintiff properly accomplished service by delivery to MVD, we do not reach her alternative argument.

The terms on which MVD service may be used are set forth in ORCP 7 D(4)(a)(i), which, at the relevant time, provided:

"In any action arising out of any accident, collision, or liability in which a motor vehicle may be involved while being operated upon the roads, highways, and streets of this state, any defendant who operated such motor vehicle, or caused such motor vehicle to be operated on the defendant's behalf *who cannot be served with summons by any method specified in subsection D(3) of this rule,* may be

---

[3] *Baker* dealt specifically with the service methods set forth in ORCP 7 D(2) and (3) and did not involve MVD service. The court's rationale, however, logically extends to MVD service, and the court acknowledged as much by way of footnote. 310 Or at 225 n 7. We have consistently recognized MVD service to be a form of service that, if used when authorized by the rule, presumptively is adequate. *E.g., Walters v. Angeles,* 151 Or App 502, 505, 950 P2d 346 (1997); *Mitchem v. Rice,* 142 Or App 214, 217-18, 920 P2d 1121, *as modified* 143 Or App 546, 923 P2d 1347, *rev den* 324 Or 394 (1996); *Paschall v. Crisp,* 138 Or App 618, 622, 910 P2d 407, *rev den* 324 Or 176 (1996); *id*. at 626-27 (Leeson, J., concurring).

served with summons by leaving one copy of the summons and complaint with a fee of $12.50 with the Department of Transportation or at any office the department authorizes to accept summons or by mailing such summons and complaint with a fee of $12.50 to the Department of Transportation by registered or certified mail, return receipt requested. The plaintiff shall cause to be mailed by registered or certified mail, return receipt requested, a true copy of the summons and complaint to the defendant at the address given by the defendant at the time of the accident or collision that is the subject of the action, and at the most recent address as shown by the Department of Transportation's driver records, and at any other address of the defendant known to the plaintiff, which might result in actual notice to the defendant. For purposes of computing any period of time prescribed or allowed by these rules, service under this paragraph shall be complete upon the date of the first mailing to the defendant." [4]

(Emphasis added.)

Under that rule, when an action arose out of an automobile vehicle accident, a plaintiff could serve the operator of a vehicle (or anyone who caused the vehicle to be operated on his or her behalf) by delivery to MVD only if the plaintiff could not serve defendant by the methods contained in subsection D(3).

Subsection D(3), in turn, specified that an individual defendant may be served in three ways:

"[B]y personal service upon such defendant or an agent authorized by appointment or law to receive service of summons or, if defendant personally cannot be found at defendant's dwelling house or usual place of abode, then by substituted service or by office service upon such defendant or

---

[4] ORCP 7 D(4) relating to MVD service was significantly amended in 1997. Here and throughout this opinion, we quote from and cite to the 1995 version of the service rules because the service in this case took place while those former rules were still in effect. Under the 1997 amendment to ORCP 7 D(4), a plaintiff is required only to make "at least one attempt to serve the defendant * * * by a method authorized by subsection (3) of this section except service by mail pursuant to subparagraph (3)(a)(i)." Subsection (3) also was changed in 1997, but the change was of no consequence to the analysis here.

an agent authorized by appointment or law to receive service of summons."·

*Former* ORCP 7 D(3)(a)(i).[5]

Finally, *former* ORCP 7 D(7)[6] described what must be shown to establish that a defendant cannot be served by any of the methods of service provided in subsection D(3):

"A defendant cannot be served with summons by any method specified in subsection D(3) of this rule if the plaintiff attempted service of summons by all of the methods specified in subsection D(3) and was unable to complete service, or if the plaintiff knew that service by such methods could not be accomplished."

The terms on which a plaintiff under the rules governing this case could resort to substituted service by delivery on MVD are, for the most part, straightforward. First, the defendant must be a person who operated, or caused to be operated, a motor vehicle involved in an accident. Second, the plaintiff must have unsuccessfully attempted service through the methods specified in subsection D(3) (*i.e.*, personal, substituted, and office service) or, for any method not attempted, the plaintiff must demonstrate that he or she knew that service by that means could not be accomplished. When those terms of the rule are satisfied, a plaintiff may serve a defendant by delivery of process to MVD, together with certified or registered mailing of process to the defendant's address.

The issue here is whether plaintiff made sufficient efforts to serve defendants before resorting to MVD service.[7] With respect to personal and substituted service, there is no

---

[5] Subsection D(3) also specifies the manner of service on minors, incapacitated persons, corporate bodies, and other persons and entities not relevant here.

[6] Because of the 1995 amendment to subsection 7 D(4), the terms of *former* ORCP 7 D(7) are no longer relevant to the MVD service provisions. ORCP 7 D(7) therefore was replaced with ORCP 7 D(6)(g), which now applies to court orders for service by other methods.

[7] We note that one of defendants—Brenda Martin—was the registered owner of the vehicle, rather than the driver. Use of MVD service for that defendant is not an issue. We presume, therefore, that the registered owner qualifies as someone who caused the vehicle to be operated on her behalf, within the meaning of the rule. That conclusion is consistent with plaintiff's complaint, which alleged that in driving the vehicle, Matthew Martin was acting in the course and scope of his agency or employment for Brenda Martin.

question that plaintiff attempted those forms of service and could not accomplish them, thus satisfying ORCP 7 D(7) for two of the three forms of service in ORCP 7 D(3). Plaintiff attempted personal service through a qualified process server (the sheriff's deputy) at the only address for defendants known to her—*viz.*, the address given on the accident report, which was the same as the most recent address on file with MVD. She also attempted substituted service at that address through the deputy sheriff, but the occupants told him that neither defendant lived there.

Plaintiff did not, however, attempt the third form of service under subsection D(3)—that is, office service. The pivotal issue is whether she was excused from doing so. Under ORCP 7 D(7), the answer depends on whether the record adequately establishes that plaintiff "knew" that office service could not be accomplished. That, in turn, depends on what the rule means in requiring a party to "know" that service cannot be achieved in a particular way.

Used as a verb, to "know" generally means:

> "2a: to have cognizance, consciousness, or awareness of: have within the mind as something apprehended, learned, or understood * * * 3: to apprehend with certitude as true, factual, sure, or valid conviction of certainty."

*Webster's Third New Int'l Dictionary*, 1252 (unabridged ed 1993). As both common usage and the quoted definition suggest, to "know" something suggests a state of mind in which a person is consciously aware of or consciously apprehends the thing "known." The term also implies at least some level of confidence in the information or awareness.

As we have observed in other contexts, however, "knowledge" as used in statutes and regulations often refers either to actual knowledge—a state of mind based on facts and information—or to constructive knowledge—referring to the extent to which information gives one reason to know a fact, whether or not a person has actual knowledge of the fact. *See Oregon Occupational Safety v. Port of Portland*, 141 Or App 467, 472-73, 918 P2d 448 (1996) (citing *Black's Law Dictionary*, 784 (5th ed 1979)). In the context of this case, were the term to mean actual knowledge, the focus would be

on what information a plaintiff in fact apprehended and what conclusion the plaintiff drew based on that information. If the term were to mean constructive knowledge, however, the statute would also require consideration of information reasonably available to a plaintiff, even if the plaintiff was not aware of the information. Thus, a constructive knowledge standard would impose on a plaintiff some responsibility to obtain information, whereas an actual knowledge standard would not.

The parties' arguments reflect those differing potential interpretations. Plaintiff, on the one hand, argues that the plain language means that "no standard of inquiry is required" and that MVD service is proper "if, from the information and facts actually known to a plaintiff and her attorney, it is reasonable to believe that the defendant cannot be served at her known home and work addresses." Defendant, on the other hand, urges that the statute requires a plaintiff to exhaust "all reasonable means * * * in attempting to locate the defendant for service." Nothing in either the statute's language or context helps us pick between those meanings.

We therefore turn to legislative history. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Although the history is sparse, it is helpful. ORCP 7 D(4) was amended in 1990 to provide that MVD service would be available only if the forms of service under ORCP 7 D(3) could not be accomplished. Simultaneously, ORCP 7 D(7) was added, identifying what must be shown to establish that a party cannot be served by any of the methods of service provided in subsection D(3). In making those changes, the Council on Court Procedures intended that a plaintiff would only be required to show a reasonable effort to use the methods available under ORCP 7 D(3). Significantly, the council expressly stated that by requiring "a reasonable effort" on the plaintiff's part, a plaintiff would *not* have to make "the extensive search for defendant required in cases interpreting earlier statutory language such as *Ter Har v. Backus*, 259 Or 478[, 482, 487 P2d 660] (1971)." Council on Court Procedures, Staff Comment to ORCP 7, 1990, *reprinted in* Lisa A. Kloppenberg, Oregon Rules of Civil Procedure: 1997-1998 Handbook at 28.

■ That history clarifies that the statute was intended to impose *some* obligation on a plaintiff to obtain facts and information. Thus, in referring to whether a plaintiff "knows" that a particular service method cannot be accomplished, the inquiry focuses not on just actual knowledge but also on constructive knowledge—*i.e.*, what a plaintiff reasonably should know. The council's commentary also tells us, however, that the investigation required of a plaintiff was not intended to be exhaustive—"a" reasonable effort to locate the defendant must be made, not "any and all" reasonable efforts.

The distinction, although linguistically a small one, has practical importance. The council's commentary explicitly declared that the intent was not to return to the standard of *Ter Har*. *Ter Har* was decided under an older provision for MVD service, one that permitted MVD service only upon a showing by affidavit of "due diligence" that the defendant could not be found within the state. *Ter Har,* 259 Or at 480. *Ter Har* interpreted that term to require a plaintiff to "*exhaust all* reasonable means" of locating a particular defendant. *Id.* at 483 (emphasis added). What was reasonable, the court agreed, would depend on the facts of the particular case. But the court specifically listed, as likely information sources to be exhausted, inquiry at the post office, at a defendant's place of employment, at public utility companies, and with friends, family, and neighbors. *Id.* at 482.

Significantly, when *Ter Har* was decided, the MVD service provisions did not require prior resort only to specified methods of service (personal, substituted, or office). Thus, a plaintiff under *Ter Har* had to exhaust all potential alternative forms of service, as well as potential sources of information that would facilitate those forms of service. In 1979, when the legislature deleted the "due diligence" language from the MVD service provision, it replaced it with language specifying exactly what actions a plaintiff must take before resorting to MVD service. *Harp v. Loux*, 54 Or App 840, 846-48, 636 P2d 976 (1981), *rev den* 292 Or 589 (1982). Although the precise requisites to MVD service have changed over time, the rule continues to specify exactly what steps

must first be taken, rather than to impose a general "due dil-igence" standard or otherwise require exhaustion of exten-sive efforts to locate a defendant beyond those set forth in the rule.

Thus, the key difference between the MVD service provisions under *Ter Har* and the provisions applicable to this case (*i.e.*, as amended in 1990) is that the rule contains a closed set of service methods that a plaintiff must attempt, rather than, as in *Ter Har,* a completely open-ended set of possibilities. Under the applicable rule, the forms of service that must be attempted or shown infeasible are only three—personal, substituted, and office.

The requirement, then, is that a plaintiff make a reasonable effort to attempt service in the methods specified or, alternatively, to determine whether those methods would be futile. The nature of that effort will depend on the partic-ular circumstances. In this context, the particular circum-stances include the fact that plaintiff and defendant are involved in litigation as a result of an automobile accident. Unlike most events that give rise to law suits (*e.g.*, personal, professional, or business dealings), automobile accidents typ-ically involve persons who are complete strangers to each other. As a rule, the individuals have no business or personal connection, beyond the misfortune of having crossed paths on a roadway at an inopportune moment. They may reside in the same general area where the accident occurred; as likely, however, they may be from geographically distant locales. Often what they know about each other will be limited to the information they are required to exchange at the accident scene and to personal observations they make at the time.[8] The fleeting and often stranger-to-stranger contact of an automobile accident is an important circumstance to consider in determining what kind of search for information a plaintiff reasonably must undertake.

■ The unique setting of an automobile accident takes on particular significance where the method of service in question is office service. Here, the accident report did not

---

[8] It is worth noting that accidents often involve personal trauma, stress, and injury such that the victims may be too distraught to obtain information they need or to make reliable observations; indeed, they may not even be conscious.

disclose an employer or place of business for defendants, and plaintiff had no personal knowledge whether either defendant maintained a business somewhere in the state or where either defendant might have been employed.[9] As it happened, plaintiff lives and works in the small rural community where defendants resided before moving. Rather than provide a basis for locating defendants, however, that circumstance contributed to why plaintiff believed defendants could not be located, through work or otherwise. Plaintiff knew that defendants neither worked there nor had been seen in the area in a long time.

The only way that plaintiff possibly could have acquired the information needed to attempt office service would have been to launch some form of massive, statewide search attempting to find where, if at all, defendants might conduct business or be employed.[10] To interpret the statute to require plaintiffs to undertake such a search would render the MVD service provision a virtual nullity. Realistically, from the information that plaintiff possessed and that was reasonably available to her, plaintiff had no basis on which to attempt office service or, for that matter, to believe that office service was a possibility. Consequently, we hold that she was not required to attempt that futile form of service or to investigate further whether she could do so. *See* ORCP 7 D(7).

In arguing that plaintiff was not entitled to use MVD service, defendants rely, as they did at trial, on our decision on reconsideration in *Mitchem v. Rice*, 142 Or App 214, 920 P2d 1121, *as modified* 143 Or App 546, 923 P2d 1347, *rev den* 324 Or 394 (1996). Defendants urged, and the trial court agreed, that our decision on reconsideration in *Mitchem* requires a plaintiff in all cases to contact an extensive list of sources (the post office, employers, public utilities of all

[9] A person's employer or business office is not among the information required to be exchanged by drivers at the time of a motor vehicle accident under Oregon law. ORS 811.700.

[10] For present purposes, we assume that service at a person's place of employment may be encompassed in the authorization for "office service." Under ORCP 7 D(2)(c), "office service" applies if "the person to be served maintains an office for the conduct of business." Whether a mere employee of a business qualifies as maintaining an office for the "conduct of business" is not an issue in this case and we imply no opinion on the question.

kinds, etc.) to attempt to determine whether office service would be feasible.

In our original decision in *Mitchem*, we held that the plaintiff was not entitled to serve the defendant by delivery to MVD because "there [was] nothing in the summary judgment record describing any attempt to serve defendant by office service or any averment that plaintiff had even investigated whether such service could have been accomplished." 142 Or App at 219. Analyzed under our original holding in *Mitchem*, this case is distinguishable. Here, as previously described, plaintiff did make positive averments sufficient to establish that office service reasonably could not have been accomplished.[11]

On reconsideration in *Mitchem*, we expanded the grounds of our decision somewhat. In petitioning for reconsideration, the plaintiff objected that our opinion inappropriately required her to show that she had attempted office service, when the burden should fall on the defendant, as the party seeking summary judgment, to contend that she had failed to attempt office service. *Mitchem*, 143 Or App at 549. We concluded, first, that the defendant had made the necessary contention at trial. *Id.* We further concluded that the defendant had asserted other inadequacies in the plaintiff's service and that the plaintiff had failed to meet that assertion. Drawing from several earlier precedents not involving MVD service, we identified the post office, the defendant's employer, public utility companies, and friends, neighbors and relatives as at least possible sources a plaintiff must exhaust. *Id.* at 550.

---

[11] We also found an inadequate basis to resort to MVD service in *Walters*, 151 Or App 502. That case, too, is distinguishable from this one. The only averment for not attempting office service in *Walters* was the plaintiff's *counsel's* assertion that she did not believe the defendant maintained an office because he spoke Spanish and never said that he owned a business or had an office. *Id.* at 505. Moreover, the plaintiff in *Walters* was actually aware of another possible address for the defendant, but made no attempt at service there. Our holding in *Walters* was premised on the inadequacy of service in light of counsel's failure to investigate or attempt service at that other possible address. *Id.* Here, in contrast, plaintiff personally averred that she knew that defendants did not work in the community in which they resided at the time of the accident and that they had not been seen in that community for a long time. She had no work address or employer for either defendant and, unlike the plaintiff in *Walters*, plaintiff here did not have any address for defendants other than the one in Sixes where they no longer resided.

■      The list of possible sources in *Mitchem* was illustrative, however, not exclusive or mandatory. The essential failing of the plaintiff's showing in *Mitchem* was, and remained on reconsideration, the lack of *any* averment relating to whether office service had been attempted or why it reasonably would prove futile. Again, the particular circumstances of each case determine what sources must be considered. The sources listed in *Mitchem* may, in some cases, be ones that a plaintiff reasonably should contact. In exhausting office service, public utilities and the post office may be useful sources to contact when an accident involves a vehicle used by a business entity.[12] Those sources are less likely to be able to provide information relevant to office service, however, if the accident involved personal use vehicles. In reiterating the kinds of sources to be considered generally, *Mitchem* should not be understood to have imposed a particular set of criteria by which every MVD service issue is tested. The test is only whether, given the circumstances, a plaintiff reasonably has determined that office service cannot be accomplished. To meet that test, a reasonable effort to obtain information from logical sources must be made. Neither the text nor the legislative history of the rule provides any basis to require persons involved in automobile accidents to go to extraordinary measures to acquire—or to exhaust all possibility of acquiring—the information needed to determine whether office service is a possibility, nor must they seek out information from sources that are unlikely to provide relevant information. *See generally Harp*, 54 Or App at 848 and n 4 (former version of ORCP 7 D(4) does not require a showing that plaintiff has attempted to find a defendant motorist's address in any manner that the rule does not specify).

As we have already described, plaintiff made the showing necessary to demonstrate that office service could not be accomplished. Accordingly, she was entitled to use substituted service on the MVD.

---

[12] For example, if the plaintiff were involved in an accident with a service truck for a local plumbing business, and the plumbing business later were to move its office to a new location, then the post office or local utilities might be a logical way to locate the new address, as might the "yellow pages" of the local telephone book.

Summary judgment for defendant reversed; case remanded for entry of partial summary judgment for plaintiff and for further proceedings.