754 P.2d 1365

**MUNICIPAL COURT OF the CITY OF PHOENIX In and For the COUNTY OF MARICOPA, Honorable John Wiehn, Judge Thereof and the State of Arizona, ex rel., Roderick G. McDougall, City Attorney for the City of Phoenix, Defendants-Appellants,**

v.

**John P. WALDRON, Plaintiff-Appellee.**

**No. 1 CA–CIV 9356.**

Court of Appeals of Arizona, Division 1, Department D.

Jan. 19, 1988.

Review Denied June 21, 1988.

Roderick G. McDougall, City Atty. by Kurt N. Mills, Michael P. Scott, Asst. City Prosecutors, Phoenix, for defendants-appellants.

Thomas A. Scarduzio, Jr., Phoenix, for plaintiff-appellee.

EUBANK, Judge.

The single issue raised in this appeal is whether a criminal defendant can waive his right to consult privately with counsel by failing to request a private consultation. The City of Phoenix appeals a special action to the superior court in which the defendant, John Waldron, sought and was granted relief from the municipal court's denial of his motion to dismiss the DWI charges. We have jurisdiction pursuant to A.R.S. § 12–120.21(A)(1) and Rule 8(a), Rules of Procedure for Special Actions. *See Zarate v. Jennings,* 17 Ariz.App. 401, 498 P.2d 475 (1972).

The facts are undisputed. John Waldron was arrested by Officer MacIver on February 25, 1986 for driving while under the influence of intoxicating liquor, in violation of A.R.S. § 28–692(A). He transported Mr. Waldron to the Maryvale Police Station for processing. At the station, Mr. Waldron refused to take the breathalyzer test and requested to be allowed to telephone his attorney. The record is clear that Mr. Waldron did not know the name of his attorney, was not able to locate the name of his

attorney in the telephone book, and could not properly dial the telephone. Officer MacIver testified:

Q: Was he able to make phone calls?

A: Not unassisted, no.

Q: Could you explain what you mean by that?

A: Sure. We had him in that caged holding area and as Officer Kohl stated in his testimony, there was a—there is a phone on the wall and it's a—it's a Mountain Bells phone that's—it's a toll call only, either with a—with a calling card or by accepting reverse charges and he wasn't able to operate the phone and, and obtain any success in calling anyone.

Q: What do you mean he wasn't able to operate the phone?

A: Well, he tried to dial information and he tried to dial the number and he, he wasn't able to, to get an outside line.

Q: Did you attempt to assist him in operating that phone?

A: I explained to him how to do it but I didn't actually go into the area and, and help him with that phone.

Q: After you explained to him how to operate the phone was he able to operate the phone?

A: No.

Q: Well, what did you do then?

A: I, I asked him why didn't he come on out here with me and, and sit next to me and I'd, I'd—instead of calling the operator each time tryin' to make a toll call, he could just dial direct.

Q: Then what did you do?

A: I, I brought him out of the cage and he sat right next to me and we go—went and found a phone book and I gave it to him to look for his attorney.

Q: Did he indicate that that's what he wanted you to do, is to help him?

A: Yes, he asked for—he, he tried to find his attorney and finally pushed the book away and so I, I said I'll try if you'd like and he said yeah, go ahead.

Q: When you brought him out of the holding cage where he'd been unsuccessful in using the telephone, did he come willingly?

A: Yes.

Q: And that was the point that you offered to help—.

A: Yes.

\* \* \* \* \* \*

Q: Can you tell me what the specific nature of your assistance was to Mr. Waldron as far as using the telephone?

A: I dialed the number.

Q: Did he give you the number?

A: No, we had to look it up in the phone book.

Q: Did you look it up or did he look it up?

A: I looked it up when he finally came up with the right name.

\* \* \* \* \* \*

Q: After he—you indicated that he was successful finally in talking to his attorney. Is that right?

A: Yes, he did talk to his attorney.

Q: And you were aware that he was talking to his attorney?

A: Yes.

Q: Did his attorney ever request to talk to you?

A: I don't recall. I don't re—I don't know if he requested of him. I, I don't recall talking to his attorney.

Q: Did Mr. Waldron ever ask that his conversation with his attorney be private?

A: No.

\* \* \* \* \* \*

Q: At any time during your period of contact with Mr. Waldron, did he ever request a private phone call with his attorney?

A: No, he did not.

Q: Apparently during the period of time when he was talking to his attorney, you were somewhere nearby. Is that correct?

A: Yes.

Q: Roughly how far away were you?

A: I'd say two feet.

Q: Did you listen to the substance of the conversation?

A: No, I did not.

During their conversation, the attorney asked Waldron if other people could hear the conversation to which Waldron responded "yes." He then told Waldron that it was better that they not speak at that time but that Waldron should call him as soon as he was bailed out. The record is clear that neither Waldron nor his attorney asked the police officers to step away so that they could have a private conversation. Both police officers testified that they neither listened to the conversation nor took notes of it. MacIver did testify, however, that if he had heard something incriminating, he would probably have used it in his investigation.

Waldron filed a motion to dismiss the charges, alleging that he had been denied his right to consult privately with his attorney. After an evidentiary hearing, the municipal judge denied the motion, stating that the defendant has an obligation to request a private consultation. Waldron then filed a special action in superior court, which accepted jurisdiction and ordered the municipal court to dismiss the charges. The superior court judgment stated:

THIS COURT FINDS that the plaintiff was deprived of his right to consult with counsel in private.

THIS COURT FURTHER FINDS that Plaintiff does not have to invoke his right to privacy while talking to his attorney.

THIS COURT FURTHER FINDS that the right to privacy was inherent in the right to counsel once that right is provided to a defendant.

THIS COURT FURTHER FINDS that had the plaintiff or his counsel requested privacy, no facilities were available to facilitate such a request.

IT IS THEREFORE ORDERED reversing the Phoenix City Magistrates [sic] decision denying Defendant's Motion to Dismiss.

IT IS FURTHER ORDERED remanding this matter to the Phoenix City Court for the magistrate to enter an Order dismissing this matter.

THIS REMAND IS ORDERED as the "right to counsel in criminal proceedings includes the right to consult in private with an attorney." *State v. Holland,* 147 Ariz. 453, 455 [711 P.2d 592] (1985).

The City of Phoenix claims on appeal that the superior court judge abused his discretion in granting Waldron special action relief and further that Waldron was not deprived of his right to consult privately with counsel because he never invoked that right. We agree and therefore reverse the trial court.

The trial judge relied on *State v. Holland,* 147 Ariz. 453, 711 P.2d 592 (1985) in ordering the dismissal. In *Holland,* our Supreme Court held that a defendant who requests that he consult with his counsel in private be allowed to do so. There, both the defendant and his attorney had asked the attending police officer to leave the room so that they could confer privately over the telephone. The police officer refused to leave and instead stood close enough to the defendant so that he could hear the defendant's responses. The defendant's counsel later claimed that he felt unable to ask the defendant questions about his condition and conduct prior to arrest and that without that information he was unable to properly advise his client. The state, relying on *Campbell v. Superior Court,* 106 Ariz. 542, 479 P.2d 685 (1971), argued that defendant had no right to consult his attorney concerning whether to submit to a breathalyzer test. Therefore, any lack of privacy was irrelevant.

The Supreme Court said:

We believe the state misreads *Campbell, supra.* Admittedly, under *Campbell* a person is not entitled to consult with counsel prior to deciding whether or not to take a breathalyzer. *Id.* As we noted in *McNutt* [*vs. Superior Court*] *supra,* 133 Ariz. [7] at 10 n. 2, 648 P.2d 122 [ (1982) ] "a defendant has no right to delay by demanding to consult with counsel before being required to choose a blood alcohol test or possible driver's license suspension as provided for in A.R.S. § 28–691." However, that is not the factual situation before us. Defendant is not arguing he was improperly denied the opportunity to consult with counsel prior to taking the breathalyzer test. Instead, defendant maintains that

where, as in this case, a person is allowed to consult with counsel he has a right to do so in private. We agree.

A person always has the right to consult with an attorney even when under the facts he need not be informed of this right. *Campbell* does not negate the right to counsel. All *Campbell* says is that the police need not wait for the defendant to consult with counsel before the sobriety tests are conducted. We believe the law is clear—if the defendant talks to his counsel, he must be allowed to do so in a meaningful way. *On the facts of this case, defendant was denied the right to counsel by the refusal of the police officer to allow him to confer in private with his attorney.* (Emphasis added).

147 Ariz. at 456, 711 P.2d at 595. *See also State v. City Court of Tucson*, 150 Ariz. 379, 723 P.2d 728 (App.1986).

The facts in the instant case are different from those in *Holland.* Here neither the defendant nor his attorney ever asked the attending police officer for a confidential telephone conversation. Furthermore, it is clear from the record that Mr. Waldron was incapable of either locating his attorney in the telephone book or telephoning him without the substantial assistance of the police officer. Finally, rather than Mr. Waldron's attorney requesting to speak with a police officer, he advised Mr. Waldron that, "it was better that we did not speak on the telephone at that time and for him to call me as soon as he was bailed out by his wife." The advice was probably based on the fact that Mr. Waldron had already refused to take the breathalyzer test. Thus, on the facts of this appeal, Mr. Waldron was not denied the right to counsel.

The judgment of dismissal is reversed and this matter is remanded to the municipal court for further proceedings.

HAIRE, C.J., and FROEB, P.J., concur.