Argued and submitted February 27, reversed in part; affirmed in part; remanded for further proceedings July 2, petition for review denied October 28, 1997 (326 Or 68)

## STATE OF OREGON,
*Appellant,*

*v.*

## KAREN JOYCE RIDDLE,
*Respondent.*

## (CRH950162; CA A90960)

941 P2d 1079

Douglas F. Zier, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Daniel Q. O'Dell, Deputy Public Defender, argued the cause for respondent. With him on the briefs were Sally L. Avera, Public Defender, and Alan H. Biedermann, Deputy Public Defender.

Before Riggs, Presiding Judge, Landau, Judge, and Richardson, Senior Judge.

RICHARDSON, S. J.

## RICHARDSON, S. J.

In this driving under the influence of intoxicants (DUII) case, the state appeals a pretrial order suppressing the results of field sobriety tests (FSTs) and an Intoxilyzer test. The state contends that defendant's right against self-compelled testimony under Article I, section 12, of the Oregon Constitution does not compel exclusion of the FSTs, nor does her right to consult with counsel under Article I, section 11, of the Oregon Constitution compel exclusion of the breath test results. We reverse in part and affirm in part.

On February 24, 1995, Oregon State Police Trooper Caudell, responding to a report of erratic driving, followed defendant's truck for a short distance. After Caudell saw defendant make a very wide turn and swerve into the oncoming lane of traffic, he activated his overhead lights and stopped her. Caudell noticed a faint odor of alcohol on defendant's breath and that she had watery eyes. Caudell also noticed a gallon jug of wine with approximately one pint missing, and a paper sack that appeared to contain a fifth of liquor, inside the truck. Defendant stated that she had drunk some alcohol earlier in the day, and the trooper classified her speech as fair.

At that point, Caudell asked defendant to perform some field sobriety tests and advised her that her refusal to do so could be used against her in court. Defendant then performed the Horizontal Gaze Nystagmus (HGN) test, the modified Romberg test, the finger-to-nose test, the finger-count test, and the one-leg stand test. After defendant's unsatisfactory performance, Caudell arrested her and transported her to the Hermiston Safety Center (center), which was the nearest facility with an Intoxilyzer machine. In that center, all telephone lines are recorded automatically, and signs informing users of that fact are posted. The closest unrecorded line was a public telephone booth approximately two blocks from the center.

Caudell began to advise defendant of her rights, and defendant interjected a request to contact her attorney. Using a center telephone, she called her attorney, who returned her call several minutes later. Defendant's attorney

asked the trooper to allow him to speak to defendant out of the officer's presence, to permit defendant to use an unrecorded telephone line, and to give him the results of the HGN test. The trooper responded that he could not leave defendant unattended, that there was no unrecorded line, and he could not reveal the HGN results. The trooper completed paperwork and observed defendant while she conversed with her attorney for approximately 22 minutes; he did not listen to the conversation but remained within earshot for its duration. He did not obtain or listen to the taped conversation between defendant and her attorney. Defendant ultimately submitted to the breath test and was charged with DUII.

Defendant moved to suppress the results of the FSTs. The trial court stated that the "precise contours of 'testimonial evidence' " had not yet been established and, because the state failed to establish which portions of defendant's performance was purely physical, *State v. Fish*, 321 Or 48, 893 P2d 1023 (1995), evidence of defendant's performance of the FSTs must be suppressed. The court also suppressed results of the Intoxilyzer, concluding that defendant was denied her right to consult with counsel under Article I, section 11, of the Oregon Constitution, because she was not allowed to speak with her attorney on an unrecorded telephone line. The court stated that

"the lack of a 'secure' telephone had a chilling and inhibiting effect on [d]efendant's ability to conduct an open and forthright conversation with her attorney sufficient for her to freely consult and obtain timely and accurate legal advi[c]e."

We review appeals from suppression rulings for errors of law. ORS 138.220; *State v. Belt*, 325 Or 6, 14, 932 P2d 1177 (1997).

The state's first assignment of error challenges the suppression of all the FSTs, namely, the HGN test, the modified Romberg test, the finger-to-nose test, the finger-count test and the one-leg stand test. The state contends that, although defendant was advised of her right to refuse and of the consequences of refusal, the FSTs performed were not testimonial in nature and, therefore, did not require exclusion under *Fish*. Defendant argues that the trial court properly suppressed the FSTs, because at least portions of the

tests were testimonial and impermissibly compelled her to testify against herself.

In *Fish*, the Supreme Court determined that Article I, section 12, of the Oregon Constitution prohibits officers from placing individuals in the "cruel dilemma" of choosing to testify against themselves by virtue of performing FSTs or having their refusal to give such testimony admitted as evidence against them at trial. Certain FSTs involving counting, answering questions about date of birth and residence, and reciting the alphabet are testimonial. *Fish*, 321 Or at 60. Thus, under *Fish*, if officers advise individuals that their refusal to perform FSTs may be used, any FSTs then performed that produce testimonial evidence must be excluded.

■ We have attempted to further discern which FSTs are testimonial in nature and subject to the right against self-incrimination. *State v. Gile*, 147 Or App 469, 936 P2d 1008 (1997); *State v. Nielson*, 147 Or App 294, 936 P2d 374 (1997). FSTs that reveal the individual's intoxicated state "without requiring the individual to reveal his or her thoughts, beliefs, or 'state of mind' [are] not testimonial." *Nielson*, 147 Or App at 306. Those FSTs that produce only physical evidence, such as the HGN and the walk-and-turn tests, are nontestimonial in nature and generally do not require exclusion. *Gile*, 147 Or App at 473. In this case, the court erred by suppressing the results of the HGN and the finger-to-nose tests.[1] The HGN and finger-to-nose tests produce evidence of a purely physical nature and therefore, defendant's performance of those tests did not compel her to testify against herself.

■ The other tests, the modified Romberg, the finger-count and the one-leg stand tests, all have a verbal component that could be considered testimonial. *See Fish*, 321 Or at 72-74 (describing the tests). However, they are "divided attention" tests that are designed to distract an individual

---

[1] The finger-to-nose test is conducted in the following manner:

"Instruct the person to stand straight with heels together, eyes closed, arms at sides and head tilted back. Instruct the person to touch the end of the person's nose with end of the index finger by bringing the person's arm and hand from the person's leg directly to the nose. Have the person repeat for the other index finger and repeat the test in the same manner, if deemed appropriate. Generally demonstrate the test[.]" OAR 257-25-020(1)(B)(e).

with a verbal task—such as counting and reciting the alphabet—while requiring the individual to perform a physical task and are not "intended to elicit the suspect's thoughts, beliefs or state of mind." *State v. Spicer*, 147 Or App 418, 936 P2d 1005 (1997). Thus, in *Spicer*, we concluded that evidence relating to the suspect's physical performance was not testimonial and did not compel exclusion. *Id.* We conclude that here the court erred in ordering suppression of the nontestimonial components of the field sobriety tests.

We turn now to the state's second assignment of error. In a criminal case, a driver arrested for DUII must be afforded a reasonable opportunity to consult with counsel before deciding whether to submit to a breath test under Article I, section 11, of the Oregon Constitution. *State v. Spencer*, 305 Or 59, 74, 750 P2d 147 (1988). We have held that the right to consult with counsel "in the criminal DUII setting includes the right to a private consultation." *State v. Penrod*, 133 Or App 454, 457, 892 P2d 729 (1995). Deprivation of a reasonable opportunity to consult with counsel warrants suppression of the breath test results. *State v. Brazil-Kay*, 137 Or App 589, 593, 907 P2d 1116 (1995), *rev den* 323 Or 484 (1996). We also have recognized that the right to consult privately with counsel before submitting to a breath test may be limited in some circumstances. *Penrod*, 133 Or App at 457.

In this case, the state contends that defendant was given a reasonable opportunity to obtain legal advice before deciding whether to submit to the breath test because she was able to have, in essence, a confidential communication. Defendant was allowed to speak with her attorney uninterrupted for 22 minutes, she was informed that her conversation would not be listened to, and the tape never was played back or obtained by the trooper. Under the state's theory, those actions satisfied her constitutional rights under the circumstances. Defendant responds that regardless of whether anyone listened to the tape, the act of recording her conversation denied her ability to confidentially communicate with counsel. Relying on our decision in *Penrod*, defendant argues that the state has not justified its restriction on her right to consult privately with her attorney as a necessary means to maintain security.

In *Penrod*, the defendant was arrested for DUII and taken to the police station. Before the defendant was asked to submit to a breath test, she spoke with her attorney by telephone in the arresting officer's presence. Penrod's attorney requested the officer to leave the room to enable him to have a confidential communication between himself and the defendant. The officer refused to leave the defendant's presence during the short phone call, and she ultimately refused to take the breath test because she was not allowed "to have a private talk with [her] attorney." *Id.* at 456.

On appeal from her conviction, we stated that

"[v]alid security concerns may justify according less than absolute privacy to an arrestee who is seeking legal advice regarding a breath test. However, when a defendant contends that his or her right to a confidential conversation with counsel has been unreasonably restricted, it is incumbent upon the state to show that the restriction was justified by the need to collect evidence or, as in this case, to maintain security." *Id.* at 459.

In *Penrod*, because the exit was nearby, the officer's presence in the room during the defendant's conversation with her attorney was justified. However, because the state had not justified its need to have the officer stand close enough to overhear Penrod's side of the conversation, we concluded the breath tests should have been suppressed. *Id.* As we further explained,

"[e]ven if the state had made such a showing, defendant would have been allowed to offer evidence that less intrusive means of securing custody, affording a greater degree of privacy, were available. Thus, it is not necessarily enough for the state to show that 'some' limitation on a defendant's right to a private consultation with counsel was necessary; rather, *it must justify the extent to which that right was limited*." *Id.* at 459 n 6. (Emphasis supplied.)

The state, in this case, has committed a serious infringement on defendant's right to a private consultation: tape recording the conversation between defendant and her attorney. As we stated in *Penrod*, "confidentiality is inherent in the right to consult with counsel[,]" and we cannot condone such an intrusion without justification. *Id.* at 457. The state's

contention that, because no one ever listened to or obtained the taped conversation, defendant had a "confidential communication" with her attorney misses the mark. Defendant is entitled to a reasonable opportunity to *consult privately* with her attorney, and the chilling effect of tape recording the communication occurs at the time of the conversation. The violation cannot be cured later simply because no one listened to the tape. The state has not demonstrated why defendant, who had been cooperative and posed no risk of flight, could not have been taken two blocks away to a phone booth, or why an unrecorded line could not be installed at the center so that a person in custody may consult privately with his or her attorney.[2] Because defendant was denied a reasonable opportunity to consult privately with her attorney, we conclude that the trial court properly suppressed the Intoxilyzer results; "to hold otherwise would effectively render the right meaningless." *Id.*

Reversed in part; affirmed in part; remanded for further proceedings.

---

[2] In her supplemental brief, defendant suggests that the state violated ORS 165.540 by recording the conversations between defendant and her attorney. It is a Class A misdemeanor to obtain or intercept telephone conversations without the consent of at least one party to that communication or without a search warrant. ORS 165.540(1); 165.540(9). Although there is a "police station" exception, that exception does not include conversations between attorneys and clients. The exception in ORS 165.540(2)(a) provides:

"The prohibitions in * * * this section shall not apply to * * * public officials in charge of and at jails, police premises, sheriffs' offices, Department of Corrections institutions and other penal or correctional institutions, *except as to communications or conversations between an attorney and the client of the attorney*." (Emphasis supplied.)

The state conceded at oral argument that tape recording conversations, such as the one at issue in this case, most likely violates this statute. We do not base our holding on that statute.