Argued and submitted November 29, 2000; resubmitted en banc January 10, affirmed February 21, 2001

# STATE OF OREGON,
*Respondent,*

*v.*

# THOMAS EVERETT DURBIN,
*Appellant.*

(CR980102; CA A105880)

23 P3d 363

Beth Corbo, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Public Defender.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Deits, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Kistler, and Brewer, Judges.

BREWER, J.

Haselton, J., dissenting.

**BREWER, J.**

Defendant appeals from his conviction for driving under the influence of intoxicants (DUII). ORS 813.010. He contends that the trial court erred in denying his motion to suppress the results of an Intoxylizer test, because he was denied the right to a private consultation with counsel before the administration of the test. We affirm.

On February 22, 1998, defendant was stopped and arrested by Officer Cuellar of the Prineville police department for driving under the influence of intoxicants. Cuellar transported defendant to the Crook County Jail. After booking, Cuellar placed defendant in the processing room and began a 15-minute observation period before administration of an Intoxylizer breath test.[1] Cuellar started an audio recording tape in order to record his conversation with defendant. When Cuellar began to question defendant from an Oregon State Police form, defendant stated that he was "pleading the Fifth." The officer stopped questioning defendant at that point and asked defendant if he had an attorney. Defendant replied, "No." Cuellar then provided defendant with a list of attorneys whom defendant could contact. Defendant said, "Okay." Cuellar turned off the tape recorder and assisted defendant in reviewing the attorney list. Defendant then used a telephone in the processing room to call attorneys from the list while Cuellar remained present. Two attorneys declined to represent defendant, and he was unable to reach two others. Finally, defendant reached attorney James Larson, with whom he spoke for approximately three minutes. Cuellar remained in the room, within earshot, while defendant consulted with Larson, because Cuellar was still observing defendant for the required pretest period. Cuellar testified that he was required both to watch and to listen as part of the observation protocol. He also testified that he could not have left the room and observed defendant through a window because, if defendant had turned away from him,

---

[1] The observation period is required by administrative rule. OAR 257-030-0070(2)(a). The rule requires the observing officer to make certain that the arrestee "has not taken anything by mouth (drinking, smoking, eating, taking medication, etc.), vomited, or regurgitated liquid from the stomach into mouth," because those acts might impair the validity of the breath test.

he could not have observed whether defendant was regurgitating.

After the phone call to Larson, Cuellar asked defendant if he was ready to proceed, and defendant answered in the affirmative. Cuellar then advised defendant of his rights under the Implied Consent Law, *see* ORS 813.130, and asked if defendant would take the Intoxylizer test. Defendant consented to take the breath test and also answered questions asked by the officer relating to the test. Defendant was then charged with DUII.

Defendant moved to suppress the breath test results, arguing that his right to consult with an attorney under Article I, section 11, of the Oregon Constitution, was violated by the officer's presence in the room during defendant's phone consultation with Larson.[2] The trial court denied the motion to suppress, and defendant appeals from his conviction after a stipulated facts trial.

On appeal, defendant renews his contention that Cuellar's presence during his conversation with his attorney violated his right to a private consultation with counsel and that the trial court, accordingly, erred in denying his motion to suppress. We review appeals from breath-test suppression rulings for errors of law. ORS 138.220; *State v. Riddle*, 149 Or App 141, 144, 941 P2d 1079, *rev den* 326 Or 68 (1997). Article I, section 11, of the Oregon Constitution, requires that a driver accused of DUII be afforded a reasonable opportunity to consult with counsel before deciding whether to submit to a breath test. *State v. Spencer*, 305 Or 59, 74-75, 750 P2d 147 (1988). The right to consult with counsel in a criminal DUII setting includes the right to a private consultation. *State v. Penrod*, 133 Or App 454, 457, 892 P2d 729 (1995); *see also Riddle*, 149 Or App at 146. The degree of privacy allowed may be limited in order to ensure the performance of an accurate breath test, or it may be limited because of security considerations. *Penrod*, 133 Or App at 457; *State v. Goss*, 161 Or App 243, 248, 984 P2d 938 (1999). However, the state must

---

[2] Defendant also moved to suppress his statements made after he invoked his right against self-incrimination. The trial court granted that motion as to statements other than defendant's consent to take the breath test. The state does not cross-assign error to that ruling, and we do not discuss it further.

justify both the necessity and the extent of the limitation under the particular circumstances. *Id.*

The state argues that it was not required to justify any limitation on defendant's right to a private consultation with counsel, because there is no evidence that defendant ever requested privacy. The state notes that Cuellar[3] did not testify that either defendant or Larsen asked him to leave the room or to move out of hearing range of defendant's voice during the telephone conversation. According to Cuellar, when defendant finished the consultation, he told the officer that he was ready to proceed and consented to take the Intoxylizer test. Under those circumstances, the state asserts that the officer was not required to afford defendant a private consultation by leaving the room or otherwise moving out of earshot. Defendant responds that the officer was required to provide him with privacy even though he did not request it. In support, defendant relies on *Penrod*, *Riddle* and *Goss*. Defendant's reliance on those cases is misplaced. Although they demonstrate that "confidentiality is inherent in the right to consult with counsel," *Penrod*, 133 Or App at 457, they do not hold or suggest that privacy must be provided if it is not requested.

In *Penrod*, we reversed a trial court ruling denying the suppression of the defendant's refusal to take a breath test. The defendant was permitted to confer with an attorney by telephone before she was asked to take the breath test. The attorney asked to speak with the attending officer. The attorney asked the officer to leave the room to allow the defendant to have a confidential conversation with him. The officer declined to leave. The defendant then refused to take the breath test " 'due to [her] not being able to have a private talk with [her] attorney.' " *Id.* at 456. After determining that the state had not justified the limitation the officer placed on the defendant's right to a private consultation, we held that the defendant was not given a "reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test, and evidence of her refusal to take the breath test should have been suppressed." *Id.* at 460.

---

[3] Cuellar was the only witness who testified at the suppression hearing.

In *Riddle*, the attending officer permitted the defendant to contact her attorney on a recorded telephone line. When the defendant's attorney returned her call, he asked the officer to allow him to speak to the defendant outside of the officer's presence on an unrecorded line. 149 Or App at 143-44. The officer responded that he could not leave the room and that no secure line was available. The defendant then conferred with her attorney despite the officer's presence and ultimately agreed to take a breath test. *Id.* at 144. We affirmed the trial court's suppression of the test results, emphasizing that, by recording the attorney-client communication, the state "committed a serious infringement" on the defendant's right to a private consultation. *Id.* at 147.

In *Goss*, we affirmed the trial court's denial of the defendant's motion to suppress evidence of his refusal to take a breath test. When the defendant asked to talk to his attorney by phone at the police station, the officer dialed the attorney's number, handed the phone to the defendant, and remained in the room. 161 Or App at 246. The defendant briefly conferred with his attorney in the officer's presence and then asked for privacy. *Id.* The officer refused to leave, because he was observing the defendant during the pretest period and also because of security reasons. Consequently, the defendant refused to take the breath test. We concluded that the trial court erred in denying the suppression motion, because the "state failed to justify the complete denial of defendant's ability to consult privately with his attorney, and that lack of privacy affected defendant's refusal to take the test." *Id.* at 250. Although we affirmed the defendant's conviction, we did so based on a harmless error analysis. *Id.* at 250-51.

The unifying fact in each of the foregoing cases is the attending officer's refusal to permit a private consultation that was *specifically requested* by the defendant or his attorney. In each case, there was evidence that the denial of privacy affected the defendant's decision whether to take the breath test, *Penrod*; *Goss*, or, alternatively, the court presumed that the taping of the conversation—after an express request for privacy—chilled the defendant's ability to consult with counsel. *Riddle*. None of those circumstances existed in this case. There is no evidence that defendant or his attorney

requested a private conversation.[4] Nor is there any evidence suggesting that defendant's communication with his attorney was impaired or that his decision to take the breath test was influenced by Cuellar's presence. Defendant does not contend otherwise. Instead, his argument reduces to the proposition that, because defendant was talking to his attorney, the officer had an *independent* duty to avoid overhearing defendant's side of the conversation, despite the fact that the observation period had already begun. We disagree.

It would have been a simple matter for defendant or his attorney to ask Cuellar for privacy. If either had done so, the officer could have considered whether and how to accommodate the request, and a reviewing court could then determine whether any limitation on privacy was justified. But the officer was not required spontaneously to leave the room and, as defendant suggests, *attempt* to monitor him through a window. An unobserved telephone conference during the pretest monitoring period would defeat the proper administration of a breath test. *Penrod*, 133 Or App at 458 n 3. Under the circumstances here, the officer's presence did not violate defendant's right to consult with an attorney under Article I, section 11.

In the dissent's view, we have improperly segmented the right to counsel by emphasizing the fact that defendant did not request a private conversation with his attorney. We disagree.

To say, as we did in *Penrod*, that confidentiality is "inherent" in the right to consult with counsel, does not mean that the right to consult is meaningless if confidentiality is restricted or even denied. The dissent's analogy of the right to counsel to an indivisible "bundle of sticks" is an interesting point but it cannot be correct. Defendants who are in custody talk to their attorneys in the presence of police officers every day in courthouses throughout the state. Of course, they usually seek privacy insofar as possible but, depending on the nature of their communications, sometimes they do not. Depending on the circumstances, the right to counsel can be

---

[1] Defendant does not contend that Cuellar overheard Larson's side of the telephone conversation.

meaningfully enjoyed, even if not always exercised in complete privacy.

Furthermore, to say that confidentiality *inheres* in the right to consult with counsel means that it is a normal incident of that right. It does not follow that it need not be independently asserted, at least under circumstances such as those found here. We are not dealing here with a practice that strikes at the heart of attorney-client confidentiality, such as police interception of communications between an unsuspecting attorney and incarcerated client. Lawyers and clients who confer by telephone during a DUII pretest observation period may well have a different set of expectations. Those expectations may be colored by knowledge that the lawyer's side of the conversation can take place outside of the attending officer's earshot, that the defendant's voice can be lowered, that the attorney may instruct the defendant to answer questions in such a way so as not to divulge confidential information to anyone else present in the room, or even that the attending officer may have a legitimate reason to remain in the defendant's presence. It is not in the least unreasonable to expect a defendant and an attorney who desire greater confidentiality to request privacy under such circumstances.

The dissent relies on three decisions from other jurisdictions that are plainly distinguishable. *Farrell v. Municipality of Anchorage*, 682 P2d 1128 (Alaska App 1984) and *State v. Holland*, 147 Ariz 453, 711 P2d 592 (1985), like *Penrod*, *Riddle*, and *Goss*, involved circumstances in which the defendant actually requested a private consultation with counsel that was refused by the police. In fact, *Holland* was later distinguished in *Municipal Court of Phoenix v. Waldron*, 157 Ariz 90, 754 P2d 1365, 1368 (1988). In *Waldron*, the Arizona Court of Appeals held that a defendant charged with drunk driving was not, as a result of the attending officer's failure to provide privacy, denied his right to counsel under the Sixth Amendment to the United States Constitution. The court distinguished *Holland* because, among other reasons, "neither the defendant nor his attorney ever asked the attending police officer for a confidential telephone conversation." *Id.*

In *State v. Beaupre*, 123 NH 155, 459 A2d 233 (1983), the defendant did request a private conversation with counsel, and the court did hold as the dissent says. However, an important difference limits the usefulness of its holding here. In *Beaupre*, the state introduced at trial statements that the attending officer overheard the defendant make in a telephone conversation with counsel. On appeal, the court held that, assuming the police could not leave the defendant's presence for valid security reasons, "the remarks cannot be admitted at trial any more than if the police overhear or eavesdrop on a lawyer's office, because a voluntary relinquishment of the attorney-client privilege has not occurred." *Id.* at 159. *Beaupre* thus involved a very different suppression issue than the one at stake here. Here, the state did not offer defendant's statements to his attorney in evidence at trial, nor is there any suggestion that it capitalized on information that the officer may have overheard. The question, instead, is whether the trial court was required to suppress evidence of the results of a breath test to which defendant voluntarily submitted after talking to his attorney. *Beaupre* is of no assistance in resolving that issue.

In sum, the cases on which the dissent relies do not support its position. Instead, the weight of authority from other jurisdictions, for the value it may have, is consistent with our conclusion. For example, in *City of Seattle v. Koch*, 53 Wash App 352, 767 P2d 143 (1989), the court reversed the dismissal of DUII charges against defendants, one of whom claimed that her right to counsel was violated by the presence of an officer while she talked to her attorney on the telephone. The court rejected that argument, because neither of the defendants had requested additional privacy and, unlike the circumstances in *Holland*, there was no evidence that the defendants' ability to confer with counsel was impaired by the attending officers' presence. *Id.* at 358. Although *Koch* involved a statutory right to counsel, in *Penrod* this court cited with approval a footnote in *Koch* that appears immediately following the holding that we have just summarized. *Penrod*, 133 Or App at 457. *See also City of Grand Forks v. Soli*, 479 NW2d 872, 873-74 (ND 1992) (DUII defendant's right to counsel was not violated by officer's presence during hospital telephone conference with counsel, because the

defendant did not request "out-of-earshot" consultation); *State v. West*, 151 Vt 140, 557 A2d 873 (1988) (DUII defendant's statutory right to consult with counsel before submitting to breath test was not impaired by officers' presence during telephone consultation with counsel, where the defendant did not request greater privacy, the defendant's statements were not used to his detriment, and there was no showing that he failed to seek any advice because of officers' proximity).

■    Defendant does not contend either that his ability to consult with his attorney or that his decision to take the breath test was affected in any way by the officer's presence. Under these circumstances, we decline to adopt a prophylactic rule of suppression that would require an officer—in the absence of a request for privacy—to move out of earshot of a defendant's voice during a pretest monitoring period in order to facilitate a more private consultation between the defendant and counsel.[5]

Affirmed.

**HASELTON, J.,** dissenting.

The majority holds that a suspect in custody who has invoked the right to counsel must also invoke a further right to consult with counsel privately. The right to counsel cannot be so bifurcated. Rather, "confidentiality is inherent in the right to consult with counsel; to hold otherwise would effectively render the right meaningless." *State v. Penrod*, 133 Or App 454, 457, 892 P2d 729 (1995). Thus, I respectfully dissent.

In *State v. Spencer*, 305 Or 59, 74, 750 P2d 147 (1988), the court held that Article I, section 11, of the Oregon Constitution, entitles a person to a "reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test."[1] In *Spencer*, the court had no occasion to explicitly consider the confidentiality of such consultations. In *Penrod*, we did:

---

[5] As the Supreme Court stated in a different setting, "It is not necessary for the achievement of the protective and prophylactic purpose of the exclusionary rule to extend its application to an expectation of privacy which never actually existed." *State v. Holt*, 291 Or 343, 352, 630 P2d 854 (1981).

[1] According to *Spencer*, the Article I, section 11, right to consult counsel attaches not only after formal charges have been filed, but also at certain

"[W]e must first decide whether the right to consult with counsel in the criminal DUII setting includes the right to a private consultation. We conclude that it does. We believe that confidentiality is inherent in the right to consult with counsel; to hold otherwise would effectively render the right meaningless. *Accord State v. Cory,* 62 Wash 2d 317, 382 P2d 1019 (1963) ('it is universally accepted that effective representation cannot be had without such privacy'); *see also* cases collected in 5 ALR3d 1360 (1963)." 133 Or App at 457 (footnote omitted).

The majority emphasizes—and I acknowledge—that in *Penrod,* as well as in all of our post-*Penrod* decisions until now, the suspect or his or her counsel requested confidentiality. *See* 172 Or App at 519-21. That fortuity does not, however, affect the legal and practical correctness of our holding that "confidentiality is *inherent* in the right to consult with counsel." *Penrod,* 133 Or App at 457 (emphasis added).

"Inherent" means "structural or involved in the construction or *essential* character of something: belonging by nature or settled habit." *Webster's Third New Int'l Dictionary,* 1163 (unabridged ed 1993) (emphasis added). Similarly, "inhere" refers to "a fixed element or attribute." *Id.* To remove or qualify an essential element of the whole— here, the right to consult—renders the whole "meaningless." *Penrod,* 133 Or App at 457. Thus, when a suspect invokes the right to consult with counsel, he or she is invoking (to use the shopworn metaphor) the "entire bundle of sticks"—and not the "bundle" minus a stick or two. Having invoked the whole, there is no obligation to make a further and specific request for any particular "stick."

---

investigative stages. 305 Or at 73. The point at which a person is in custody and is faced with the decision of whether or not to submit to an Intoxilyzer test is an investigative stage at which the Article I, section 11, right to counsel attaches. *Id.* at 74. In *Spencer,* the court stated:

"A person taken into formal custody by the police on a potentially criminal charge is confronted with the full legal power of the state, regardless of whether a formal charge has been filed. Where such custody is complete, neither the lack of a selected charge nor the possibility that the police will think better of the entire matter changes the fact that the arrested person is, at that moment, ensnared in a 'criminal prosecution.' The evanescent nature of the evidence the police seek to obtain may justify substantially limiting the time in which the person may exercise his or her Article I, section 11, right, but it does not justify doing away with it." *Id.*

The right to consult with counsel is one, indivisible right—not one-and-a-half, or two. Decisions from other courts corroborate that truth. *See, e.g., Farrell v. Municipality of Anchorage*, 682 P2d 1128, 1131 (Alaska Ct App 1984) (reasonable opportunity to contact counsel "is not met when the police make no effort whatsoever to give a person who has been arrested for DWI a reasonable amount of privacy once he has contacted an attorney"); *State v. Beaupre*, 123 NH 155, 459 A2d 233 (1983) (officer who remained present while the suspect contacted counsel by telephone, although not asked to leave room, violated the suspect's right to counsel: "A meaningful exercise of the defendant's right to counsel should not depend upon whether a defendant requests permission to consult privately with his lawyer."). *See also State v. Holland*, 147 Ariz 453, 158, 711 P2d 592, 595 (1985) (state may not, without justification, prevent private consultation between arrestee and lawyer when such consultation would not unduly delay investigation of driving under the influence of intoxicants; arrestee "had a right to confidentiality so long as it did not impair the investigation or the accuracy of a subsequent breath test").

The majority deconstructs that indivisible right. It holds that a suspect's request to consult with counsel is inadequate to trigger the state's duty to afford the confidentiality without which "the right [is] meaningless." *Penrod*, 133 Or App at 457.[2] Rather, in the majority's view, the suspect in custody must also and further specifically request privacy.

Nothing in our cases suggests, much less compels, such a requirement as a matter of law. Instead, the majority's approach appears to rest, ultimately, on pragmatic considerations: "How hard is it to ask for privacy?" *See* 172 Or App at 521 ("It would have been a simple matter for defendant or his attorney to ask [Officer] Cuellar for privacy.").

---

[2] As described more fully below, in *Penrod* and other cases, we have held that a suspect's entitlement to confidential consultation is not absolute. Rather, the state may justify a failure to provide confidentiality, but only upon the state's showing that affording confidentiality after the preadministration observation has begun would either present substantial security concerns that could not otherwise be addressed or would so unreasonably delay the administration of the test as to materially interfere with its proper administration. *Penrod*, 133 Or App at 458-59. *See also State v. Goss*, 161 Or App 243, 248-50, 984 P2d 938 (1999).

With respect, the majority has it backwards: How hard is it for the state and its uniformed officers to honor an explicit and unambiguous invocation of a constitutional right—the right to consult with counsel, including the confidentiality that is "inherent in that right"? Faced with such an invocation, an officer has two choices: (1) move away and provide the necessary privacy; or (2) remain near, but be fully prepared to justify why valid security concerns or the effective administration of the test compelled such proximity. That is the functional burden that Article I, section 11, prescribes:

> "[I]t is not enough for *the state to establish* that some limitation of a defendant's right to a private consultation was necessary to preserve evidence or for security reasons. *The state must also justify* the extent of the limitation under the particular circumstances." *Goss*, 161 Or App at 248 (emphasis added).

*See also State v. Riddle*, 149 Or App 141, 148, 941 P2d 1079, *rev den* 326 Or 68 (1997) ("the state has not demonstrated" why the suspect's consultation with her attorney should not have been private); *Penrod*, 133 Or App at 459 n 6 (same).

Here, Officer Cuellar did not move away after defendant invoked his right to consult with counsel. Instead, he remained within earshot throughout defendant's conversation with his lawyer. Nor did Cuellar justify his continued proximity as required under *Penrod*, *Riddle*, and *Goss*.[3] Accordingly, I would hold that the trial court erred in denying suppression of the Intoxylizer test result.

Armstrong, Wollheim, and Kistler, JJ., join in this dissent.

---

[3] Cuellar testified that he needed to remain close to defendant to determine whether defendant regurgitated during the preadministration observation period. However, as in *Goss*, the state failed to demonstrate that administration of the test would have been meaningfully impaired if Cuellar had afforded defendant privacy and then restarted the pretest observation period. *See Goss*, 161 Or App 248-49.