Argued and submitted January 28, 2000; resubmitted en banc January 10, order of suppression vacated; remanded for further proceedings June 27, 2001

## STATE OF OREGON,
*Appellant,*

*v.*

## STEVEN ROBERT GREENWOOD,
*Respondent.*

## D9805149T; A106076

27 P3d 151

Ann Kelley, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Jennell Hall, Deputy Public Defender, argued the cause for respondent. With her on the brief was David E. Groom, Public Defender.

Before Deits, Chief Judge, Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Kistler, and Brewer, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant was charged with driving under the influence of intoxicants (DUII), ORS 813.010, and moved to suppress the results of an Intoxilyzer test that he took shortly after his arrest. The trial court granted defendant's motion to suppress, and the state appeals. ORS 138.060(3). Defendant asserted, and the trial court agreed, that defendant had not been afforded a reasonable opportunity to consult with an attorney before deciding whether to take the Intoxilyzer test. The state appeals, arguing that defendant was afforded a reasonable opportunity to consult with an attorney and alternatively asserts that, because defendant did not, in fact, contact an attorney, he is not in a position to assert that his qualified right to a private consultation with an attorney was violated. For the reasons set forth below, we vacate the order of suppression and remand for further proceedings.

The following facts were adduced at the hearing on defendant's motion. Deputy Jansen arrested defendant for DUII. As defendant was being transported to the precinct, he informed Jansen that he wanted a lawyer and specifically mentioned that he wanted a public defender. At the precinct, Jansen escorted defendant to the Intoxilyzer room and began the Intoxilyzer observation period. Defendant's hands were cuffed behind his back. Defendant again requested a public defender, and Jansen told him that he would receive a public defender's services only after he had demonstrated to the court that he was indigent. Jansen opened a telephone book to the "attorney" section and indicated to defendant that he would be happy to dial the telephone for him. At some point, defendant mentioned that he had an attorney in Seattle. Defendant stated that he wished to speak with a friend. Jansen dialed the friend's number for defendant and held the receiver to defendant's ear. Jansen could hear defendant's end of the conversation. Defendant arranged for the friend to pick him up from the precinct. Jansen asked if defendant wished to speak to the Seattle attorney, and defendant said, "No, fuck it, do what you've got to do." Defendant also testified at the suppression hearing. He stated that, after Jansen opened the telephone book to the attorney section, he stated that he could not call an attorney out of the telephone book at

10:30 at night and suggested that there must be some sort of procedure for getting an attorney under such circumstances. Defendant then submitted to an Intoxilyzer test.[1]

The trial court granted defendant's motion to suppress the results of the Intoxilyzer test, stating, "I don't think in this situation that the defendant could have thought that he was going to have a right to have a private consultation with his attorney." The court further found that Jansen's "intent was to hold the phone. He needs to give the defendant an opportunity to talk to a lawyer in some type of privacy setting, and I don't think this defendant was afforded that opportunity to do that."

The state argues on appeal that the trial court erred in suppressing the results of the Intoxilyzer test. The state acknowledges that a person who has been arrested and has been asked to take an Intoxilyzer test has a right under Article I, section 11, of the Oregon Constitution, to consult with an attorney. *See State v. Spencer*, 305 Or 59, 750 P2d 147 (1988). The state further acknowledges that, under *State v. Penrod*, 133 Or App 454, 892 P2d 729 (1995), a defendant is entitled to a private consultation with an attorney, subject to reasonable limitations necessary for the administration of the Intoxilyzer. The state suggests, however, that because defendant abandoned his attempt to reach an attorney, the trial court's finding that defendant could not have thought that he was going to be afforded an opportunity for a private consultation with an attorney is not supported by the record.[2] Defendant responds that the trial court found defendant's testimony regarding the reason he did not call an attorney to be irrelevant and impliedly not credible. Defendant asserts

---

[1] At the hearing, defendant gave a somewhat different version of what transpired. However, the trial court made it clear that it accepted Jansen's version of events over defendant's version and based its ruling on Jansen's version. We are bound by the trial court's findings, as evidence in the record supports them. *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968).

[2] The state does not suggest that, under the circumstances, a private consultation with an attorney would have delayed or interfered with the proper administration of the Intoxilyzer test. *See generally Penrod*, 133 Or App at 458; *State v. Goss*, 161 Or App 243, 248, 984 P2d 938 (1999) (the state bears the burden of establishing that some limitation of a defendant's right to a private consultation was necessary to preserve evidence or for security reasons and must justify the extent of the limitation under the particular circumstances).

that the trial court reached the correct conclusion here, based on Jansen's testimony that he would not have afforded defendant the opportunity for a private consultation with an attorney.

■■    We have held that "confidentiality is inherent in the right to consult with counsel; to hold otherwise would effectively render the right meaningless." *Penrod*, 133 Or App at 457. The state suggests that the right to a reasonable opportunity to consult privately with an attorney attaches only after the "defendant asks to talk to an attorney *and contacts that attorney*." (Emphasis added.) We reject that argument. "[T]he dispositive issue is not whether defendant was successful in contacting an attorney, but whether [he] had a reasonable *opportunity* to do so." *State v. Brazil-Kay*, 137 Or App 589, 596, 907 P2d 1116 (1995), *rev den* 323 Or 484 (1996) (emphasis in original). The state's other argument—that defendant's abandonment of his attempt to reach an attorney "cures" the problem that he was not afforded a reasonable opportunity to consult privately with an attorney—requires more discussion.

In *State v. Durbin*, 172 Or App 515, 23 P3d 363 (2001), we considered whether a defendant was denied his Article I, section 11, right to consult with an attorney before deciding whether to take an Intoxilyzer test where the defendant did not specifically ask that he be permitted a private consultation and a police officer remained present during the consultation. We noted that, in past cases in which we had found a violation of a defendant's constitutional right, the defendants or their attorneys had specifically requested privacy and been denied privacy. "In each case, there was evidence that the denial of privacy affected the defendant's decision whether to take the breath test, * * * or, alternatively, the court presumed that the taping of the conversation— after an express request for privacy—chilled the defendant's ability to consult with counsel." *Id.* at 520 (citations omitted). By contrast, in *Durbin*, there was no "evidence suggesting that defendant's communication with his attorney was impaired or that his decision to take the breath test was influenced by [the police officer's] presence." *Id.* at 521. We concluded that because the defendant had not contended "either that his ability to consult with his attorney or that his

decision to take the breath test was affected in any way by the officer's presence[,]" suppression was not required. *Id.* at 524.

Application of the rule of law announced in *Durbin* to the circumstances present in this case, however, is somewhat problematic. As noted above, defendant initially invoked his right to consult with an attorney. At the time defendant ultimately abandoned his attempt to reach an attorney, his hands were cuffed behind his back and his telephone call to a friend had been conducted with a police officer not only standing beside him but actually holding the telephone for him. We also have a finding by the trial court that, "I don't think in this situation that the defendant could have thought that he was going to have a right to have a private consultation with an attorney."

The question, as we see it, is whether a defendant is obliged to make a futile request for a private consultation with an attorney when, under the circumstances, it was clear that he would not be granted a private consultation with an attorney. *See, e.g., Krummacher v. Gierloff*, 290 Or 867, 884, 627 P2d 458 (1981) ("the constitution does not require * * * useless and futile gestures for the sake of form"). Although we have never recognized a futility exception in the context presented here, Oregon courts have recognized a futility exception in several other contexts.

For example, in the criminal context, ORS 131.625 provides the general rule regarding the permissible scope of reasonable officer safety. Specifically, an officer "may frisk a stopped person for dangerous or deadly weapons if the officer reasonably suspects that the person is armed and dangerous to the officer or other persons present." ORS 131.625(1). However,

> "[t]here may be circumstances in which the interests of officer safety could justify handcuffing a dangerous person who refuses to submit to a frisk during a lawful stop. But when an officer fails to follow the procedure outlined in ORS 131.625, and there is no reason to believe that attempting to do so would be futile, then the use of handcuffs exceeds the restraint permitted by the statute." *State*

*v. Johnson,* 120 Or App 151, 158, 851 P2d 1160, *rev den* 318 Or 26 (1993).

In the civil context, we have also applied a futility exception in determining whether a plaintiff is entitled to use substituted service of process on the Motor Vehicles Division pursuant to ORCP 7 D. *Carlson v. Martin,* 160 Or App 350, 360, 983 P2d 1031, *rev den* 329 Or 287 (1999); *see also Gish v. Youngblood,* 161 Or App 591, 595-96, 984 P2d 931, *rev den* 329 Or 527 (1999). In *Carlson,* we held:

> "Under the applicable rule, the forms of service that must be attempted or shown infeasible are only three—personal, substituted, and office.
>
> "The requirement, then, is that a plaintiff make a reasonable effort to attempt service in the methods specified or, alternatively, to determine whether those methods would be futile. The nature of that effort will depend on the particular circumstances." 160 Or App at 360.

Finally, in the workers' compensation context, the Supreme Court has acknowledged a futility exception to the requirements of ORS 656.206(3). *See SAIF v. Stephen,* 308 Or 41, 45-48, 774 P2d 1103 (1989); *see also Sinclair v. Champion International Corp.,* 117 Or App 515, 518, 844 P2d 933 (1992). In *Stephen,* the court held that

> "before a claimant is entitled to [permanent total disability benefits] he or she must establish that, but for the compensable injury, he or she (1) is or would be willing to seek regular gainful employment and (2) has or would have made reasonable efforts to obtain such employment. A claimant who is so incapacitated that he or she cannot perform regular gainful employment need not establish that he or she 'has made reasonable efforts to obtain such employment' because seeking such work would be futile. ORS 65.206(3) was not intended to require claimants to engage in such a useless act." 308 Or at 47-48.

■■ The rule of law central to those cases that apply a futility exception is that when, based on the totality of circumstances presented, adhering to the general rule would be futile, following that general rule is excused. Although neither this court nor the Oregon Supreme Court has applied a

futility exception in this context, we believe that it is appropriate to do so, given the nature and importance of the constitutional right at stake. Under the circumstances presented here, the test for determining whether a request for a private consultation with an attorney would be futile is that the defendant must subjectively believe that he or she will not be permitted a private consultation with an attorney before making a decision whether to submit to an Intoxilyzer test and that the belief must be objectively reasonable under the totality of the circumstances. *Cf. State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986) ("Probable cause under the Oregon Constitution has both a subjective and an objective component. An officer must subjectively believe that a crime has been committed and * * * this belief must be objectively reasonable in the circumstances.").

Given *Durbin*, and given our recognition of a futility exception in this opinion, a remand is required. That is so because we cannot determine from the trial court's comments and ruling whether the court based its suppression on (a) the rationale that was rejected in *Durbin* that a defendant who is offered an Intoxilyzer test and who has invoked the right to counsel is not obligated to specifically request privacy, or (b) the futility exception, that a defendant who is offered an Intoxilyzer test need not make a futile request for a private consultation with counsel if the defendant reasonably believes, under the totality of the circumstances, that a request for a private consultation with an attorney will not be honored.

The trial court explicitly found that it did not think "in this situation that the defendant could have thought that he was going to have a right to have a private consultation with an attorney." That finding arguably could support a conclusion that the trial court found either that, objectively, a person in defendant's position would not have thought he would be afforded a private consultation with an attorney; or that, subjectively, defendant did not think he was going to be afforded a private consultation with an attorney; or that defendant did not think he was going to be afforded a private consultation with an attorney *and* that a reasonable person in defendant's position would not have thought he was going to be afforded a private consultation with an attorney. On

this record, we are not able to discern the exact nature of the trial court's finding. It is clear from various portions of the record that the trial court did not accept defendant's testimony in its entirety. Given that this is the first case in which we have outlined the nature of the futility exception, we believe that it is necessary to remand the case to the trial court for further factual findings regarding whether both the objective and subjective prongs of the futility exception have been satisfied under the circumstances of this case.

Order of suppression vacated; remanded for further proceedings.